Harold Dean RUTHERFORD, Petitioner,

v.

W. D. BLANKENSHIP et al.,
Respondents.

Civ. A. No. 77–0141–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

March 13, 1979.

James M. Shull, Quillen & Carter, Gate City, Va., for petitioner.

Jim L. Chin, Asst. Atty. Gen., Richmond, Va., for respondents.

**1358**

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

On November 13, 1973, in the Circuit Court of Carroll County, petitioner, Harold Dean Rutherford, entered pleas of guilty to malicious wounding and driving an automobile after having been adjudicated an habitual offender. He is now serving a sentence of ten years imprisonment imposed in relation to the malicious wounding plea. Petitioner petitioned the Virginia Supreme Court for a writ of habeas corpus maintaining that his pleas were void due to an improper condition requiring him to leave the State of Virginia, that they were involuntarily entered, that the circuit court lacked jurisdiction to order him confined, and that a probationary period was revoked when petitioner was, in fact, not sentenced to a period of probation. The Virginia Supreme Court denied his petition, and he now seeks a writ of habeas corpus from the district court pursuant to Title 28 U.S.C. § 2254. An evidentiary hearing was held, and this opinion shall constitute the court's findings of fact and conclusions of law.

Petitioner's pleas of guilty were entered on November 13, 1973, pursuant to a plea bargaining agreement whereby the petitioner was to be sentenced to ten years in the penitentiary on the malicious wounding conviction with the sentence to be suspended, and one year unsuspended on the habitual offender conviction to run concurrently with a twelve-month sentence which was previously imposed in relation to a third charge. As a further part of the plea agreement, petitioner agreed to leave the State of Virginia upon expiration of his one-year term.

Pursuant to his pleas of guilty, the court ordered petitioner to immediately begin serving the one-year sentence and with respect to the remaining ten-year sentence the court order stated, in part, as follows:

Whereupon the accused by counsel moved the Court to suspend the aforesaid sentence of confinement in the penitentiary of this Commonwealth for a period of ten years and place the defendant on probation and the Court not being advised takes the matter under advisement until after release from the penitentiary on another charge.

Testimony reveals that the purpose of the wording of the order was to permit the court to carry out the agreement for the banishment of the petitioner from Virginia. While the petitioner testified that he knew nothing about the banishment until receipt of a letter from his defense attorney shortly before being released from the service of his one-year sentence, the evidence establishes that the petitioner entered his pleas of guilty with full knowledge and understanding of the charges against him, the terms and conditions of the plea agreement, including his banishment from Virginia, and the consequences of his pleas.

When petitioner was released in May of 1974, Carroll County sheriff's deputies picked him up at the correctional unit, took him by his mother's home to get his belongings, and placed him on a bus to Winston-Salem, North Carolina. He returned, however, to Carroll County in December, 1974, and on December 9, 1974, the state judge issued the following order because petitioner had returned to Virginia, thereby violating the banishment condition:

It appearing to the Court that the said Harold Dean Rutherford was convicted of a felony at a former term of this Court and was sentenced to confinement in the penitentiary of this Commonwealth for a period of ten years and a motion was made to suspend the said ten years sentence and the Court not being advised took said motion under advisement.

Therefore the Court doth order that the Clerk of this Court issue a capias to perform judgment and deliver the same to the Sheriff of this County or any other Police Officer for the arrest of the said Harold Dean Rutherford . . . .

The petitioner appeared before the judge of the Circuit Court of Carroll County on December 16, 1974, and the court entered an order which reads in pertinent part as follows:

It appearing to the Court that the defendant, Harold Dean Rutherford, at a former term of this Court on November 13, 1973, entered a plea of guilty to a charge in an indictment alleging a felony, to-wit: Maiming. The Court sentenced the said Harold Dean Rutherford to ten years confinement in the penitentiary of this Commonwealth, however, motion was made by the defendant with counsel to suspend the aforesaid sentence and place the defendant on probation and the Court not being advised took time to consider said motion.

And the Court having maturely considered said motion doth order that the defendant serve the penitentiary sentence of ten years, however, in lieu of serving the aforesaid penitentiary sentence of ten years the defendant is to serve twelve months of the aforesaid sentence at confinement in the jail of this County.

Whereupon the defendant by counsel moved the Court to suspend the remainder of the aforesaid penitentiary sentence and place the defendant on probation after his release from confinement, and the Court not being advised took said motion under advisement.

And the prisoner, Harold Dean Rutherford, was remanded to the jail of this County.

After petitioner had served a few months of this twelve-month sentence, the judge of the Circuit Court of Carroll County had him brought into his chambers and reminded him of the banishment agreement and further advised him that he was suspending the remainder of the twelve-month sentence, but that the sheriff's deputies would take him to the bus station. On March 11, 1974, he was accompanied to the station and placed on a bus for North Carolina, and the court entered this order:

It appearing to the Court that the defendant was on a former day of this Court, to-wit: December 16, 1974 convicted of a felony, to-wit: Maiming, and sentenced to serve a sentence of twelve months in the jail of this County.

Therefore the Court doth order that the aforesaid jail sentence he is now serving be and the same is hereby suspended pending further investigation of this Court.

And the defendant, Harold Dean Rutherford, is hereby released from custody on his own recognizance.

Petitioner remained in North Carolina only a week this time and returned to Carroll County around March 25, 1975. He was not immediately brought before the court, for according to the testimony of the prosecutor and the defense attorney, at the evidentiary hearing, it was not unusual in Carroll County for a banishment to be ignored by the court, provided that the person banished did not cause any trouble. In any event, petitioner remained in Carroll County until about February 11, 1976. On that date, represented by court-appointed counsel, he appeared at a hearing, the transcript of which is labeled "Transcript of Revocation." However, a probation officer from Carroll County testified at the habeas corpus evidentiary hearing that he had no knowledge of petitioner being placed on probation. At the revocation hearing the state court heard evidence that petitioner had been drinking heavily, had been intoxicated on several occasions, and had once pulled a pistol on his wife to make her say grace at a meal. At the conclusion of the evidence, the court ordered petitioner to serve the remainder of the ten-year sentence which had been suspended, with the court entering the following order:

And it further appearing to the Court that on the 16th day of December, 1974 the Court having maturely considered said motion ordered that the defendant serve the penitentiary sentence of ten years, however, in lieu of serving the aforesaid penitentiary sentence of ten years the defendant was ordered to serve twelve months of the aforesaid sentence at confinement in the jail of this County. And the defendant by counsel moved the Court to suspend the remainder of the aforesaid penitentiary sentence and place the defendant on probation after his release from confinement, and the Court

not being advised took said motion under advisement.

And it further appearing to the Court that on March 11, 1975 the defendant was released from serving the remainder of the aforesaid jail sentence of twelve months pending further investigation of this Court.

And it further appearing to the Court that on this day the Court having maturely considered said motion ordered that the defendant serve the unserved portion of the penitentiary sentence of ten years.

Petitioner was confined pursuant to this order, and it is the validity of this imprisonment that he is now challenging.

## I

### The Validity of the Order of Banishment

Petitioner first contends that the Carroll County Circuit Court ordered him to leave the State of Virginia for a ten year period, and that such a sentence is null and void. On these grounds, petitioner would have this court grant him habeas corpus relief.

This court finds that petitioner was not sentenced to banishment, for the state court orders make no mention of this condition. Banishment was a condition voluntarily and knowingly agreed to by petitioner in the course of the plea bargain negotiations,[1] although for reasons outlined below, this court holds that the condition is unenforceable. There is a distinction between the defendant who is convicted and then sentenced by the court to be banished and the defendant who agrees to banishment voluntarily and knowingly as part of a plea bargain before conviction. Petitioner Rutherford falls into the latter category. However, the fact remains that petitioner pled guilty and agreed to be banished from the state in exchange for the court's suspension of the ten year sentence.

Banishment as a punishment has existed throughout the world since ancient times. In England, under a statute, it was lawful for the crown to transport prisoners beyond the seas for life for certain named felonies. *Rex v. Lewis* (1832) 1 Moody, C.C.372, 168 Eng. Reprint, 1308. In the United States, it was early held that "[t]he right to confiscate and banish, in the case of an offending citizen, must belong to every government. It is not within the judicial power, as created and regulated by the constitution of Georgia: and it, naturally, as well as tacitly, belongs to the Legislature." *Cooper v. Telfair,* 4 U.S. (4 Dall.) 14, 19, 14 L.Ed. 721 (1800). Thus the power to banish, if it exists at all, is a power vested in the Legislature and certainly where such methods of punishment are not authorized by statute, it is impliedly prohibited by public policy. *People v. Baum,* 251 Mich. 187, 231 N.W. 95 (1930), 70 A.L.R. 98 (1931).

To permit one state to dump its convict criminals into another is not in the interests of safety and welfare; therefore, the punishment by banishment to another state is prohibited by public policy. *People v. Baum, supra. See Also, State v. Doughtie,* 237 N.C. 368, 74 S.E.2d 922 (1953); *Annot.,* 70 A.L.R. 100 (1951); 21 Am.Jur.2d "Criminal Law" § 609 (1965). Banishment has also been viewed as unconstitutional because it amounts to cruel and unusual punishment or is a denial of due process of law. *Dear Wing Jung v. United States,* 312 F.2d 73 (9th Cir. 1962). Whether such a condition be considered void as against the public policy of a state or whether it is indeed unconstitutional, courts have uniformly held that the conviction shall stand and only the banishment portion of the sentence is void. *Dear Wing Jung v. United States, supra; State v. Baker,* 58 S.C. 111, 36 S.E. 501 (1900); *Haley v. Peyton,* 303 F.Supp. 336 (W.D.Va.1969).

---

1. Rule 3A:11(d), Rules of The Supreme Court of Virginia (1972), provides that a plea bargain must be in writing and signed by the Commonwealth's Attorney, the defendant, and his attorney. The court shall not participate in the negotiations. The court shall require disclosure of the agreement in open court. This Rule was not followed in this case; however, petitioner Rutherford was convicted on November 13, 1973, and subdivision (d) of Rule 3A:11 was not added until October 1, 1977.

In *Ex parte Oliver,* 11 Okl.Cr.Rep. 536, 149 Pac. 117 (1915), the defendant was sentenced to pay a fine and serve six months in jail and a commitment was issued; however, by agreement of the judge, prosecuting attorney, and sheriff, the defendant was released without serving a sentence. Three years later, another commitment was issued and the defendant was taken into custody by the sheriff. The court held that the action of the court in releasing the defendant was an attempt to exercise the power of pardon vested in the governor and therefore was unauthorized. Therefore, the judgment was not satisfied. In this case, the reason that the judge, prosecuting attorney and sheriff had released the defendant was on the condition that he leave the county. Therefore, a criminal cannot take advantage of the neglect or wrongdoing of another to avoid the punishment which has been set forth in a sentence of the court.

■ This court holds the banishment condition petitioner complains of in the case at bar null, void, and unenforceable. However, this does not affect the validity of the remaining ten year sentence and the public's right to see the sentence properly served.

## II

### The Voluntariness of Petitioner's Pleas

■ The next question this court must resolve is whether petitioner's pleas are otherwise valid. As previously stated, the evidence establishes that the petitioner entered his pleas of guilty with full knowledge and understanding of the charges against him, the terms and conditions of the plea agreement, and the consequences of those pleas. According to the Supreme Court, the standard as to the voluntariness of guilty pleas is essentially that defined by the Court of Appeals for the Fifth Circuit:

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises . . . having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). Applying this test the court finds petitioner's guilty pleas to be valid, although it finds the banishment provision to be invalid and unenforceable.

## III

### Jurisdiction to Revoke Petitioner's Suspended Sentence

Having found petitioner's pleas to be valid the court now considers his contention that the state court lost jurisdiction of his case by taking the motion to suspend the ten-year maiming sentence under advisement and failing to rule on the motion before twenty-one days had expired. The court understands petitioner to be basing his argument on Rule 1:1, Rules of the Supreme Court of Virginia (1972), which directs that "[a]ll final judgments, orders, and decrees . . . shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Petitioner appears to be asserting that after twenty-one days had elapsed from the original conviction and sentencing date of November 13, 1973, the Carroll County Circuit Court lost jurisdiction of the case and that the court was, therefore, without jurisdiction on February 11, 1976, to revoke the suspension of the sentence and order petitioner incarcerated.

■ Petitioner asserted his jurisdiction claim in a petition for writ of error to the Virginia Supreme Court and that court denied his petition. In Virginia, "a decision to grant or refuse a petition for writ of error is based upon . . . the merits of the case." *Saunders v. Reynolds,* 214 Va. 697, 700, 204 S.E.2d 421, 424 (1974). Consequently, that court found there to be jurisdiction in accordance with state law. The Virginia Supreme Court's interpretation as to the import of its own law is conclusive,

see e. g., *Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590 (1875), and an error in state law or violation of state constitutional rights is not cognizable pursuant to Title 28 U.S.C. § 2254 absent a violation of the constitution or laws or treaties of the United States. *Rose v. Hodges,* 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975).

■ Va.Code Ann. § 53–272 gives a state trial court broad authority to suspend a sentence:

> . . . [I]f there are circumstances in mitigation of the offense, or if it appears compatible with the public interest, the court may suspend the execution of sentence, in whole or in part, or the imposition of sentence or commitment . . . . [I]n case a jail sentence has been imposed upon the prisoner upon conviction of a felony, the court, or judge of such court in vacation may *at any time* before the sentence has been completely served, suspend the unserved portion of any such sentence, . . . or otherwise modify and alter the sentence imposed if it appears compatible with the public interest. (Emphasis added.)

Va.Code Ann. § 53–272 (Repl.Vol.1978). The denial of a writ of error by the Virginia Supreme Court was tantamount to a finding by the Virginia Supreme Court that the procedure utilized by the circuit court was substantially equivalent to a suspended sentence of ten years. Therefore, the action taken by the circuit court on December 16, 1974, in sentencing the defendant to twelve months in jail amounted to partial revocation of the suspended sentence, and the hearing held on February 11, 1976, resulted in revocation of the remainder, each jurisdictionally permissible under Va.Code Ann. § 19.2–306:

> The court may, for any cause deemed by it sufficient which occurred . . . within the maximum period for which the defendant might originally have been sentenced to be imprisoned, revoke the suspension of sentence . . . and cause the defendant to be arrested and brought before the court at any time . . . within one year after the maximum period for which the defendant might originally have been sentenced to be imprisoned . . . . In case the execution of the sentence has been suspended, the original sentence shall be in full force and effect, and neither the time of probation or of suspension shall be taken into account to diminish the original sentence. . . .

Va.Code Ann. § 19.2–306 (Cum.Supp.1978). The court, accordingly, finds petitioner's jurisdictional argument to be without merit.

## V

### Petitioner's Claim That There Was No Probation Period to Revoke

■ While petitioner was not placed on probation, as previously explained he was given a suspended sentence which was revoked within the time limits prescribed by Va.Code Ann. § 19.2–306. The fact that petitioner was not placed on probation is immaterial. In *Marshall v. Commonwealth,* 202 Va. 217, 220, 116 S.E.2d 270, 273 (1960), the Virginia Supreme Court stated that "good behavior is a condition of every suspension, *with or without probation,* whether expressly so stated or not." (Emphasis added.) *Marshall* also makes it clear that a defendant's substantial misconduct during the suspension period is sufficient for revocation. A review of the transcript of the revocation hearing reveals substantial misconduct on the part of the petitioner. Equally important is the fact that a review of the record demonstrates that petitioner's suspended sentence was revoked for those reasons independent of petitioner's violation of the banishment provision.

In summary, petitioner's pleas to malicious wounding and to driving a motor vehicle after having been adjudicated an habitual offender were voluntarily and intelligently entered. He was given a suspended sentence which was revoked within the statutory time limit for reasons independent of the invalid banishment provision. His petition, therefore must be dismissed.

PETITION DISMISSED.