846 P.2d 341

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Samuel Clayton CHARLTON,**
**Defendant–Appellant.**

**No. 14070.**

Court of Appeals of New Mexico.

Nov. 24, 1992.

Certiorari Denied Jan. 6, 1993.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals from a judgment entered after a jury trial in which he was convicted of aggravated assault and failure to appear. He raises the following issues on appeal: (1) whether there was sufficient evidence to support his conviction for aggravated assault; (2) whether the trial court exceeded its authority when it ordered Defendant banished from New Mexico; (3) whether double jeopardy prohibits the trial court from increasing Defendant's sentence after he began to serve his initial sentence; (4) whether double jeopardy prohibits the trial court from enhancing Defendant's sentence for aggravated assault (assault with a deadly weapon) with the firearm enhancement; and (5) whether the trial court committed fundamental error when it failed to instruct the jury pursuant to SCRA 1986, 14–6013.

The second calendar notice proposed to reverse Defendant's sentence and remand for entry of an amended judgment and sentence and to affirm on all other issues. Defendant has filed a timely memorandum in opposition to the proposed summary affirmance and in support of the proposed reversal and remand; the State has indicated its intention not to oppose the proposed reversal and remand. For the following reasons, we affirm Defendant's convictions, but reverse the judgment and sentence from which he appeals and remand for entry of an amended judgment and sentence.

FACTS

We adopt the statement of facts in Defendant's docketing statement because they are not challenged by the State. *See* *State v. Calanche*, 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978). Defendant operated a gas station in rural Hidalgo County. On January 25, 1990, the victim, Sammy Martinez, stopped at the station. While Martinez was there, an elderly couple drove their car into the station and told Defendant they were having car trouble. Defendant and Martinez, who happened to be a mechanic, looked under the hood to try to ascertain the problem. Both Martinez and Defendant determined that the couple could safely drive the car.

There is some dispute regarding what happened after the two men looked at the car. Eventually, however, an argument ensued and Defendant took a gun out of his back pocket, pointed it at Martinez's head, and threatened to kill him.

The trial court's original judgment, entered on May 26, 1992, sentenced Defendant to eighteen months imprisonment plus one year of parole for aggravated assault,

eighteen months imprisonment plus one year of parole for his failure to appear in court, and one year for committing a non-capital felony with a firearm, for a total commitment of four years. The court suspended all but one year of Defendant's sentence and committed Defendant to the Hidalgo County Jail to serve his sentence. The court additionally ordered "that upon release from the Hidalgo County Jail, the defendant shall **leave the State of New Mexico** and **shall not** return to the **State of New Mexico** without prior permission for [sic] the Court." (Emphasis in original.)

On June 22, 1992, while Defendant was serving the above-mentioned sentence, the trial court amended its judgment. There was only one change between the original and amended judgments, to wit, the trial court added a term of three years probation to be served by Defendant upon completion of his prison sentence.

## SUFFICIENCY OF EVIDENCE

■ Defendant first claims that the State failed to prove his guilt of the charge of aggravated assault beyond a reasonable doubt. This claim lacks merit. Martinez testified that while he was at Defendant's gas station, Defendant took a gun out of his back pocket, pointed it at Martinez's head, and threatened to kill him. This was evidence from which the jury could find beyond a reasonable doubt that Defendant committed aggravated assault with a deadly weapon.

■ Defendant further argues that because his trial attorney did not prepare the docketing statement, his case should have been assigned to the general calendar. Defendant admits, however, that his trial attorney and the attorney who prepared the docketing statement discussed the facts of his case as they are related in the docketing statement. He also admits that at least one of his attorneys partially reviewed the taped transcript of the trial. Defendant does not contend that there are any relevant facts of which this court is not aware. We are therefore not persuaded that placing this case on the general calendar would affect this court's decision. De-

fendant's suggestion that the statement of facts in the docketing statement may be deficient does not justify a general calendar assignment. *See State v. Hadley,* 108 N.M. 255, 258–59, 771 P.2d 188, 191–92 (Ct.App.1989) (this court may make a determination of the sufficiency of the evidence on summary disposition if the facts of the docketing statement clearly establish the sufficiency of the evidence), *overruled on other grounds by State v. Bedolla,* 111 N.M. 448, 806 P.2d 588 (Ct.App.1991). Accepting the facts in the docketing statement as true, *see Calanche,* 91 N.M. at 392, 574 P.2d at 1020, we conclude there was sufficient evidence to support the conviction for aggravated assault.

## BANISHMENT

■ The trial court ordered that Defendant be banished from the State of New Mexico when he finished serving his prison term. Defendant argues that banishment is an inappropriate punishment because the district court has no authority to banish and that banishment is contrary to New Mexico public policy. We agree.

Whether a criminal defendant can be banished from the State of New Mexico is a question of first impression. District courts only have that sentencing authority granted by the legislature. *State v. Sparks,* 102 N.M. 317, 324, 694 P.2d 1382, 1389 (Ct.App.1985); *State v. Crespin,* 96 N.M. 640, 643, 633 P.2d 1238, 1241 (Ct.App. 1981). The New Mexico criminal code does not specifically authorize the banishment of criminal defendants from the state. The legislature's refusal to authorize banishment as a sentencing option is evidence that banishment is contrary to the public policy of this state. Further, in the only New Mexico case considering the question of banishment, this court assumed that a trial court lacked the authority to banish a defendant, even if the defendant agreed to be banished. *State v. Gibson,* 96 N.M. 742, 634 P.2d 1294 (Ct.App.1981).

When a judge conditions a defendant's sentence upon refraining from being present in a specific location which is directly related to the offense, such as a bar or

school, such conditions generally have been upheld. Neil P. Cohen & James J. Gobert, *The Law of Probation and Parole* § 6.23, at 261 (1983); Caroll J. Miller, Annotation, *Propriety of Conditioning Probation on Defendant's Not Entering Specified Geographical Area,* 28 A.L.R. 4th 725 (1984). When the trial court orders a defendant to leave a broad geographical region, often characterized as banishment, appellate courts have routinely invalidated this condition. *See, e.g., Henry v. State,* 276 S.C. 515, 280 S.E.2d 536 (1981); *Almond v. State,* 350 So.2d 810 (Fla.Dist.Ct.App.1977). *But see Cobb v. State,* 437 So.2d 1218 (Miss.1983). Some courts have justified this on the ground that general banishment can have no rehabilitative role in modern penology. *Johnson v. State,* 672 S.W.2d 621 (Tex.App.1984); *State ex rel. Halverson v. Young,* 278 Minn. 381, 154 N.W.2d 699 (1967); *see also* Gerald R. Miller, Note, *Banishment—A Medieval Tactic in Modern Criminal Law,* 5 Utah L.Rev. 365 (1957). Other courts have found it violates public policy. *See, e.g., State v. Doughtie,* 237 N.C. 368, 74 S.E.2d 922 (1953).

Banishment "would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political rights among the several states which is the basis of the Union itself." *People v. Baum,* 251 Mich. 187, 231 N.W. 95, 96 (1930). "To permit one state to dump its convict criminals into another is not in the interests of safety and welfare; therefore, the punishment by banishment to another state is prohibited by public policy." *Rutherford v. Blankenship,* 468 F.Supp. 1357, 1360 (W.D.Va.1979). For these reasons, it has been said that where the legislature has not authorized banishment, "it is impliedly prohibited by public policy." *Id.* (citing *Baum*). Because we decide that banishment is contrary to public policy, we need not reach Defendant's argument that the sentence imposed violated his constitutional right to travel. We hold that the district court exceeded its authority when it banished Defendant from the state.

We note that in invalidating the portion of Defendant's sentence banishing him from the state, we do not invalidate all of Defendant's original sentence. When a trial court imposes one valid and one invalid sentence, this court will sever the sentences if possible in order to give effect to the valid sentence. *State v. Henry Don S.,* 109 N.M. 777, 779, 790 P.2d 1058, 1060 (Ct.App.1990). In this case, the portion of Defendant's sentence regarding banishment is severable from the rest of Defendant's sentence.

## AMENDED JUDGMENT AND SENTENCE

The original judgment and sentence filed on May 26, 1992 suspended all but one year of Defendant's sentence, which he immediately began to serve. On June 22, 1992, the trial court filed an amended judgment increasing Defendant's sentence by adding a three-year term of probation. Defendant argues that the trial court violated the prohibition against double jeopardy when it increased his sentence. We agree.

Once a trial court imposes a valid sentence, the court cannot increase the penalty. *Crespin,* 96 N.M. at 643, 633 P.2d at 1241; *State v. Castillo,* 94 N.M. 352, 355, 610 P.2d 756, 759 (Ct.App.1980). Probation is not a mandatory aspect of sentencing in New Mexico, and therefore the failure to impose a term of probation does not invalidate the sentence. *State v. Soria,* 82 N.M. 509, 484 P.2d 351 (Ct.App.1971); *cf. State v. Acuna,* 103 N.M. 279, 705 P.2d 685 (Ct. App.1985) (because failure of trial court to impose parole, which is a mandatory addition to a sentence, invalidates the sentence, parole may be added after imposition of original sentence). The trial court was without authority to increase Defendant's sentence to include probation after it had imposed the original, valid sentence. Since invalidating the banishment portion of Defendant's sentence does not render the rest of the sentence invalid, the sentence could not subsequently be increased.

## ENHANCEMENT OF AGGRAVATED ASSAULT WITH FIREARM ENHANCEMENT

As noted above, Defendant's sentence for aggravated assault was enhanced

by one year, pursuant to NMSA 1978, Section 31–18–16(A) (Repl.Pamp.1990). Section 31–18–16(A) states:

> When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment prescribed for the offense * * * shall be increased by one year, and the sentence imposed by this subsection shall be the first year served and shall not be suspended or deferred.

To prove the charge of aggravated assault, the State offered proof that Defendant assaulted Sammy Martinez with a firearm, contrary to NMSA 1978, Section 30–3–2(A) (Repl.Pamp.1984). Section 30–3–2(A) requires the State to prove beyond a reasonable doubt that Defendant used a deadly weapon to effectuate the assault. SCRA 1986, 14–305. A firearm is a deadly weapon for purposes of the aggravated assault statute. NMSA 1978, § 30–1–12(B) (Repl.Pamp.1984).

Defendant contends that the protection against double jeopardy provided by both federal and state constitutions precludes the application of New Mexico's firearm enhancement statute to his sentence for aggravated assault. We have carefully considered Defendant's well-constructed argument. While we agree that our case law should be reexamined in light of recent supreme court precedent, we are not persuaded that our disposition is incorrect.

The United States Constitution precludes " '*multiple punishments* for the same offense.' " *State v. Ellenberger,* 96 N.M. 287, 289, 629 P.2d 1216, 1218 (1981) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (emphasis added)). Not only does the Fifth Amendment to the United States Constitution apply to the states, *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)), but New Mexico provides similar protection independently of the federal mandate. N.M. Const. art. II, § 15; NMSA 1978, § 30–1–10 (Repl.Pamp.1984); *see also Swafford,* 112

N.M. at 7 & n. 3, 810 P.2d at 1227 & n. 3. Our Supreme Court recently articulated a new test for determining whether a person has been subject to double jeopardy in single prosecution cases. *Id.* at 13–15, 810 P.2d at 1233–35. *Swafford* articulates a two-step analysis for analyzing claims of multiple punishment. *Id.* at 7, 810 P.2d at 1227.

Like *Swafford,* this is a case in which the defendant contends that he has been subject to multiple punishments in a single prosecution. Under *Swafford,* the court, as a threshold matter, must determine whether the defendant's conduct was "unitary." *Id.* at 13, 810 P.2d at 1233. If a defendant's conduct is unitary, the court continues the double jeopardy analysis; if the conduct is not unitary, the double jeopardy inquiry is at an end—there is no double jeopardy violation. When the acts of a defendant alleged to have violated more than one statute are close in time or space, or the quality and nature of the acts are not sufficiently distinguished from each other, the conduct is said to be unitary. *Id.* at 13–14, 810 P.2d at 1233–34. In the present case, Defendant's relevant conduct constituted a single act, i.e., pointing a gun at Martinez, which is unitary conduct under *Swafford.*

Once a court finds that a defendant's conduct is unitary, the court must determine whether the legislature intended to impose multiple punishments. The double jeopardy clause is said not to apply to the legislature, because it is within the power of the legislature to impose punishments for the violation of a criminal statute. *Id.* at 13, 810 P.2d at 1233 (citing *Grady v. Corbin,* 495 U.S. 508, 518, 110 S.Ct. 2084, 2091, 109 L.Ed.2d 548 (1990), and *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983)). A legislature may impose multiple punishments for a single act if it wishes; the double jeopardy clause only requires that the reviewing court be able to determine the intent. *See Ellenberger,* 96 N.M. at 290, 629 P.2d at 1219. If the court finds that the legislature intended to impose multiple punishments for the defendant's con-

duct, there is no double jeopardy violation. *See State v. Tsethlikai,* 109 N.M. 371, 373, 785 P.2d 282, 284 (Ct.App.1989).

 Unless the legislature expressly provides for multiple punishments, the court must ask whether one offense is "subsumed within the other." *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234 (citing *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). *Blockburger* asks whether each offense "requires proof of a different element." 284 U.S. at 304, 52 S.Ct. at 182. The reviewing court must compare the elements of the two statutes; it need not consider the actual evidence presented to prove the elements of the offense. If when using the *Blockburger* test the court finds that the two offenses are the same, the defendant may not be punished under both statutes. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234.

While Section 31–18–16(A) arguably manifests the legislature's express intent for an additional sentence, we address Defendant's argument assuming it does not. Therefore, we consider whether, as Defendant contends, the firearm enhancement statute is subsumed by the aggravated assault statute. We first note that *Blockburger* is used to compare the elements of two criminal offenses. In the present case, however, we do not have two criminal offenses, but one criminal offense and one enhancement statute. Although the enhancement statute does not have "elements" per se, it does have certain specific requirements. In order to apply *Swafford,* we treat the requirements of the enhancement statute as elements.

The firearm enhancement statute requires a separate finding of fact that the defendant committed a noncapital felony and used a firearm to commit the crime. Section 31–18–16(A). The relevant portion of the aggravated assault statute requires a finding that the defendant unlawfully assaulted or struck at another with a deadly weapon. Section 30–3–2(A). Although by definition aggravated assault is a noncapital felony, none of its elements require a finding that a noncapital felony was committed. In addition, the aggravated as-

sault statute prohibits specific conduct, making it a fourth-degree felony, while the firearm enhancement statute mandates an increase in the basic sentence imposed. We conclude that each statute contains an element or elements not included in the other and that one is not subsumed by the other.

Because *Blockburger* does not indicate that our aggravated assault statute and our firearm enhancement statute merge, there is a rebuttable presumption that the legislature intended to impose multiple punishments upon a person who commits aggravated assault with a firearm. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. "That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent. Here, we must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes." *Id.* If the court, after applying the "traditional means of determining legislative intent," is unable to find an intent to apply multiple punishments, the rule of lenity requires the court to presume "the legislature did not intend pyramiding punishments for the same offense." *Id.* at 14–15, 810 P.2d at 1234–35.

This court has previously held that the legislature intended to apply the firearm enhancement statute to *"any felony other than a capital felony." State v. Gabaldon,* 92 N.M. 230, 234, 585 P.2d 1352, 1356 (Ct.App.1978) (emphasis added). This court has also held that the legislature intended to apply the firearm enhancement statute to aggravated battery with a deadly weapon. *See State v. Gonzales,* 95 N.M. 636, 624 P.2d 1033 (Ct.App.1981), *overruled on other grounds by Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981). These holdings are not irrelevant under *Swafford.* Under *Swafford,* statutory construction is part of the analysis.

We have examined the terms of Section 31–18–16 in light of *Swafford* and we conclude that the legislature intended to permit multiple punishment. The legislature has provided for enhancement not only of the first use of a firearm to commit a noncapital felony; it also has provided for enhancement of a second or subsequent use of a firearm to commit a noncapital felony. *See* § 31–18–16(B). Thus, the fire-

arm enhancement statute provides a generally applicable deterrent to the use of firearms. We do not think that it serves the same purpose as Section 30–3–2. *Cf. State v. Haddenham*, 110 N.M. 149, 152, 793 P.2d 279, 282 (Ct.App.1990) (felon in possession statute and general habitual offender statute serve common purpose). We cannot say that one statute is more specifically applicable than another. *See id.* Therefore, we construe the phrase "a noncapital felony" to mean "any noncapital felony," and we conclude that the legislature intended the punishment imposed by the trial court in this case. Under these circumstances, the prohibition against double jeopardy does not preclude enhancing a sentence for aggravated assault pursuant to Section 31–18–16(A). *See State v. Tsethlikai.*

## FAILURE TO GIVE JURY INSTRUCTION

■ Defendant's last claim of error regards the trial court's alleged failure to instruct the jury on the State's burden of proving the basis of the firearm enhancement. Specifically, Defendant argues that the trial court's failure to instruct the jury according to Uniform Jury Instruction 14–6013 amounted to fundamental error. Defendant raises this claim for the first time on appeal; trial counsel did not object to the instructions as given.

The special verdict form given to the jury asked "Do you find that a firearm was used in the commission of Aggravated Assault as charged in Count I?" This instruction does not include a burden of proof. The instruction given to the jury on aggravated assault, however, required the jury to find beyond a reasonable doubt that Defendant used a ".25 caliber semi-automatic handgun" to commit the crime.

In *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.), *reversed on other grounds by* 90 N.M. 191, 561 P.2d 464 (1977), this court found that the general burden of proof instruction was not sufficient to cure a special verdict form on the use of a firearm that did not include an instruction on the burden of proof. *Id.* at 241–42, 561 P.2d at 940–41. *Kendall* is distinguishable from the case at bar. In the present case, the jury specifically found beyond a reasonable doubt that Defendant used a handgun. The burden of proof instruction given in *Kendall* made no reference to the use of a firearm. *Id.* We cannot say that the trial court committed fundamental error when it did not instruct the jury according to Uniform Jury Instruction 14–6013, nor can we say that, as a matter of law, trial counsel's failure to object to the jury instructions as given amounted to ineffective assistance of counsel.

## CONCLUSION

In summary, we find sufficient evidence to convict Defendant for aggravated assault. We reverse the trial court's order banishing Defendant from New Mexico and its order placing Defendant on probation. We affirm the portion of Defendant's sentence increased by the firearm enhancement statute. We remand for entry of an amended judgment and sentence in accordance with this opinion.

IT IS SO ORDERED.

BIVINS and BLACK, JJ., concur.