873 P.2d 272

**STATE of New Mexico, ex rel., HUMAN SERVICES DEPARTMENT, Petitioner–Appellee,**

v.

**Margarita BARELA, Respondent–Appellant.**

No. 14840.

Court of Appeals of New Mexico.

March 7, 1994.

Bruce Lowenhaupt, Sp. Asst. Atty. Gen., New Mexico Human Services Dept., Child Support Enforcement Div., Las Cruces, for petitioner-appellee.

Anna L. Juarez, Las Cruces, for respondent-appellant.

## OPINION

PICKARD, Judge.

This case involves a parent's reimbursement to the State of monies expended for public assistance payments made and to be made on behalf of the parent's children. We affirm the order of the district court, which held that the parent's obligation may be ascertained without regard to the obligations of any other parent.

Mother has two children by separate fathers. At the time of the hearing held on this matter, Mother did not know the specific whereabouts of the fathers. Both of the children live with their grandmother and receive public assistance from the State. In January 1993, the State Human Services Department (HSD) filed a non-support petition alleging that Mother was liable for the assistance expended by the State on the children, *see* NMSA 1978, §§ 27–2–27 & –28 (Repl. Pamp.1992), and that she should support the children as provided by the New Mexico Child Support Guidelines, *see* NMSA 1978, § 40–4–11.1, Worksheet A—Basic Visitation

(Cum.Supp.1993). A hearing was held, and the child support hearing officer found, inter alia, that Mother owed the State $1864 for public assistance already furnished by the State to the children. In addition, the hearing officer found that Mother should make future monthly support payments of $150 as continuing child support for the children.

Mother objected to the hearing officer's report and decision, and the district court, after reviewing the record, see NMSA 1978, § 40–4B–8(C) (Cum.Supp.1993), affirmed the hearing officer's decision. Mother now appeals to this Court, see NMSA 1978, § 40–4B–9 (Repl.Pamp.1989), and makes three basic arguments: (1) that the hearing officer erred in making her responsible for repayment of the entire amount already spent by the State to support her children, (2) that the hearing officer erred in failing to give Mother credit for the amount of support she had actually provided to the children, and (3) that the hearing officer erred in calculating the amount of future payments to be made by Mother for her children without considering the income of the fathers of the children.

*REPAYMENT OF PUBLIC ASSISTANCE*

■ Section 27–2–28(A) of the New Mexico Public Assistance Act provides for repayment to HSD by noncustodial parents for public assistance spent on their children. Mother does not dispute that she is a noncustodial parent of the children, nor does she contest the finding that the amount of public assistance furnished to the children was $1864. What Mother does argue, however, is that it was error for the trial court to make her responsible for the entire amount of repayment when the fathers are noncustodial parents as well. We disagree.

Section 27–2–28(A) states in relevant part that "[a] noncustodial parent is liable to the human services department *in the amount of the public assistance* lawfully and properly furnished to the children...." (Emphasis added.) We believe that the intent behind this language was to facilitate the collection of monies spent by the State on dependent children. *See* Muriel McClelland & Lynn Cianci Eby, *Child Support Enforcement: The New Mexico Experience,* 9 N.M.L.Rev.

25, 41 (1978–79) (legislative proposals geared to making child support more effective in New Mexico were designed to facilitate collections). We further believe that making *any* noncustodial parent liable for the *entire* amount spent by state taxpayers on public assistance, even though there may be other noncustodial parents whose whereabouts are unknown, would be consistent with the intent behind the statute. *Cf. Martinez v. Martinez,* 98 N.M. 535, 539, 650 P.2d 819, 823 (1982) ("Public policy dictates that the primary obligation for support and care of a child is by those who bring a child into the world rather than on the taxpayers of the state."); *see also State v. Charlton,* 115 N.M. 35, 41, 846 P.2d 341, 347 (Ct.App.1992) (word ."a" as used in a statute construed to mean "any" when such a construction is consistent with the legislative intent behind the statute), *cert. denied,* 114 N.M. 577, 844 P.2d 827 (1993). Finally, we believe our interpretation to be consistent with more recent federal legislation, which in effect requires states to place a high priority on child support enforcement. *See* Yvonne C. Anderson & Richard A. Forster, Note, *Kansas Enacts New Provisions for Child Support Enforcement— Mandatory Wage Withholding,* 25 Washburn L.J. 91, 100–01 (1985) (states required to conform to 1984 federal child support enforcement amendments or suffer financial losses in public assistance funding); Nancy Rank, Note, *Beyond Jurisprudential Midrash: Toward a Human Solution to Title IV–D Child Support Enforcement Problems Across Indian Country Borders,* 33 Ariz. L.Rev. 337, 344 (1991) (states required to conform to even stricter 1988 federal child support enforcement amendments in order to continue receiving federal funds). We hold that Mother is liable to HSD for repayment of the $1864 in public assistance that the State has already furnished to her children.

*CREDIT FOR SUPPORT PROVIDED TO THE CHILDREN BY MOTHER*

■ Mother also contends that the trial court erred by failing to give credit for the amount of support she had already provided the children. Section 27–2–28(E) does provide that noncustodial parents "shall be given credit for any support actually provided, in-

cluding housing, clothing, food or funds paid prior to the entry of any order for support." However, Section 27–2–28(E) also states that "[t]he noncustodial parent has the burden on the issue of any payment." Mother admits that she presented no evidence at the hearing that she provided the children with housing, clothing, food, or funds. However, she apparently argues that because she appeared at the hearing pro se, it was either HSD's burden to show that she had not given such support or the trial court's obligation to inquire into whether such support had been provided.

 Pro se litigants, however, are bound by all of the rules applicable to litigants represented by attorneys. *Clayton v. Trotter*, 110 N.M. 369, 373, 796 P.2d 262, 266 (Ct.App.1990). Therefore, Mother's pro se status did not relieve her of her statutory burden to prove affirmatively that she had contributed to the children's support. Further, although we are mindful of Mother's assertion in her response to the petition that she was unable to obtain legal assistance, we note that Mother's motion for a continuance was granted. The record does not indicate that Mother again moved for a continuance, and Mother was represented by counsel after the hearing officer's report. If Mother wanted counsel prior to the time counsel entered her appearance, it was incumbent on Mother to alert the hearing officer to that fact or raise the issue in her objection to the report. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). Failing that, we believe that the general rule stated in *Clayton* is fully applicable here.

### APPLICATION OF THE CHILD SUPPORT GUIDELINES

Mother finally argues that it was error for the trial court to apply the Child Support Guidelines to Mother without adding each father's income to the calculation. We believe, however, that the fathers' incomes were irrelevant in determining Mother's child support obligation in this case.

Basic Visitation Worksheet A of the Child Support Guidelines provides guidance in calculating monthly child support obligations. Section 40–4–11.1, Worksheet A—Basic Visi-

tation. The Worksheet has a column for "Custodial Parent" and a column for "Other Parent." Here, no information could be given in the former column because there is no "custodial parent" in this case. As for the latter column, because it is undisputed that Mother and the fathers are all noncustodial parents, they would all be "other parents" for purposes of the Worksheet. Consequently, the respective incomes of Mother and the fathers would each require separate Worksheets for calculation of respective child support obligations, and the fathers' incomes would have had no bearing on Mother's individual obligation as an "other parent." Because only Mother's financial information was utilized in calculating her basic child support obligation, the Guidelines were correctly used in this case. Finally, Mother has not even been required to pay her basic obligation because the hearing officer found that that amount would create a substantial hardship on Mother and therefore reduced Mother's obligation to $150 a month, or approximately 57% of the Guideline amount of $265.

### CONCLUSION

For the foregoing reasons, we affirm the district court's order.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.