2004-NMCA-029

86 P.3d 611

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**WACEY C., Child–Appellant.**

**No. 23,386.**

Court of Appeals of New Mexico.

Jan. 15, 2004.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} Child appeals the judgment and disposition resulting from his probation revocation. He argues that a condition of his probation that requires him to "stay away from the communities of Cloudcroft and Cox Canyon" is impermissible because it amounts to banishment. He also argues that his detention during the time between his dismissal from Mesilla Valley Hospital and his admittance into Sequoyah Adolescent Treatment Center (Sequoyah) was cruel and unusual punishment in violation of the New Mexico Constitution. We hold that the geographical and temporal limitations of the probation condition do not bring it within the realm of banishment. We also hold that Child's detention was not cruel and unusual punishment. Accordingly, we affirm.

## FACTS AND PROCEDURE

{2} Beginning in October 2001, Child engaged in a long series of criminal activities centered in the community of Cloudcroft, New Mexico. At times working with his brother and another juvenile, he broke into the Cox Canyon Fire Department, stole a fire truck, and damaged the fire truck extensively. He and the others broke into the local museum and stole valuable artifacts and antique firearms. He broke into the home of a Cloudcroft resident, brandished a deadly weapon, threatened the woman's life, and stole her firearm. He also carried a Swiss Army knife to school. The State filed a delinquency petition alleging unlawful taking of a motor vehicle, conspiracy, burglary, aggravated burglary, larceny, and carrying a deadly weapon on school premises. Child pleaded no contest.

{3} At the hearing on this petition, several other serious concerns emerged regarding Child's activities. The father of Frank M., one of Child's co-conspirators, testified that Child had threatened Frank M. repeatedly over the course of a year. Frank M. was in protective custody at the time. The juvenile probation officer (JPO) testified that each of Child's crimes appeared to be part of a larger scheme to amass weapons in order to commit armed robbery at the Inn of the Mountain Gods and the Mescalero tribal store. The JPO stated that Child had also alluded to "taking over a reservation in a militia fashion." The JPO also testified that other community members had reported threats from Child and that some residents had taken to carrying a loaded firearm to

protect themselves from Child. In addition, the police had not yet recovered one of the stolen firearms. At the end of the hearing, the court ordered Child to undergo evaluation at the Youth Diagnostic and Development Center (YDDC) in Albuquerque. Citing concerns about Child's threats to Frank M., the missing weapon, and the Child's larger criminal schemes, the court ordered detention prior to Child's admittance into YDDC.

{4} After YDDC completed Child's evaluation, the court held another hearing in April 2002 to determine the final disposition and judgment. The State noted the seriousness of Child's diagnoses and argued that Child should receive long-term residential treatment at a highly structured program like Sequoyah. The JPO stated that a less restrictive placement, like Mesilla Valley Hospital, would be appropriate if a more restrictive option would still be available in the future if necessary. Child argued for probation without institutionalization. The court adopted the JPO's recommendation of starting treatment at Mesilla Valley Hospital and leaving open the option of Sequoyah. The court then heard from the JPO and the State's attorney, who both recommended that Child be kept away from Cloudcroft and nearby Cox Canyon. The court asked whether this would be a hardship for the family, who had by that time moved from Cloudcroft to the Mescalero reservation, and Child's attorney stated that there was no objection. The judgment and disposition ordered Child to be placed on probation that included the conditions that Child would "successfully complete the residential treatment program most appropriate to his needs," attend school, have no contact with his victims, "stay away from the communities of Cloudcroft and Cox Canyon," pay restitution for damage to the fire truck, and apologize to those victims who desired an apology.

{5} Child was admitted to Mesilla Valley Hospital for treatment. Within nine days of his admittance, the hospital reported that Child had violated the terms of his probation by hitting a peer and threatening to strangle him in his sleep and stab him with a pencil. Child had also "become actively homicidal toward all African–Americans." An arrest warrant was issued the next day, based on Child's probation violation. The State petitioned to revoke Child's probation and moved that Child be detained, citing as probable cause that Child would commit injury to others or be subject to injury by others if he were not detained. After a hearing, the court entered a new judgment and disposition on July 1, 2002, ordering Child to be placed on probation subject to his completion of the residential treatment program at Sequoyah and subject to all the other conditions of the April disposition. The July disposition also ordered Child to remain in detention "pending transportation . . . to the treatment center if accepted." Child appeals from this order.

### ISSUE ONE: Banishment

■ {6} Child argues that the condition of his probation requiring him to "stay away from the communities of Cloudcroft and Cox Canyon" for the duration of his probation amounts to banishment. The issue of whether this probation condition constitutes banishment is an issue of law that we review de novo. *See State v. Galaz*, 2003–NMCA–076, ¶ 4, 133 N.M. 794, 70 P.3d 784 (using a de novo standard to decide the issue of whether bullets constituted a "firearm" or "deadly weapons" in the context of a probation condition).

{7} "When the trial court orders a defendant to leave a broad geographical region, often characterized as banishment, appellate courts have routinely invalidated this condition." *State v. Charlton*, 115 N.M. 35, 38, 846 P.2d 341, 344 (Ct.App.1992). We have struck down banishment provisions in three cases—a sentence that required the defendant to leave New Mexico and never return without prior permission from the court, *id.* at 37–38, 846 P.2d at 343–44, a probation order conditioned on the defendant's leaving the United States, *State v. Pando*, 1996–NMCA–078, ¶ 21, 122 N.M. 167, 921 P.2d 1285, and a probation condition that required the defendant to leave the United States and "NEVER return except in a lawful manner," *State v. Andrade*, 1998–NMCA–031, ¶ 32, 124 N.M. 690, 954 P.2d 755 (internal quotation

marks omitted). All of these decisions were premised on the notion that banishment is contrary to public policy because it has questionable rehabilitative value and it may cause friction among the states. *Charlton*, 115 N.M. at 38, 846 P.2d at 344. The issue of whether the policy against banishment requires us to strike down a less restrictive probation condition, prohibiting the probationer from entering a small geographic area within the state, is one of first impression.

{8} Other jurisdictions have held that banning criminal defendants from limited geographical areas does not amount to illegal banishment. The Georgia appellate court upheld a sentence barring the defendant from a five-county region for a four-year probation term on the basis that it served the rehabilitative function of "remov[ing] the offender from a locale in which he previously succumbed to the temptation of drugs." *Wyche v. State*, 197 Ga.App. 148, 397 S.E.2d 738, 739 (1990). The Mississippi Supreme Court upheld a probation condition requiring the defendant to leave Stone County and stay 125 miles away from the county, finding that such a condition did not violate public policy and was reasonably related to the defendant's rehabilitation. *Cobb v. State*, 437 So.2d 1218, 1220 (Miss.1983). The Illinois appellate court upheld a probation condition prohibiting the defendant from returning to the primary area of prostitution in her hometown, holding that the term was reasonable and tailored to her rehabilitation and that she had the opportunity to petition the court for a change. *People v. Pickens*, 186 Ill. App.3d 456, 134 Ill.Dec. 746, 542 N.E.2d 1253, 1256–57 (1989). Without expressly considering the issue of banishment, the Maine Supreme Court upheld a probation condition prohibiting a defendant from entering two towns for five years, based on the reasonableness of the provision and the court's concern for the towns' safety. *State v. Nolan*, 759 A.2d 721, 724 (Me.2000).

{9} In light of New Mexico's banishment decisions and their rationale, and considering the authorities from other jurisdictions, we hold that the probation condition in this case does not amount to banishment. As opposed to the terms in *Charlton, Pando,* and *An-drade,* Child's probation condition does not require him to leave the state or country entirely and does not trigger concerns about interstate or international relations. Child's restriction is also limited to the period of his probation, not to exceed two years, and it is more similar to the cases from other jurisdictions in that respect. The probation condition was fashioned in response to concerns for both the Child's welfare, as Cloudcroft residents talked of arming themselves against Child, and the welfare of the area, as Child had plans for more serious regional criminal activity. Thus, the condition appears to have a protective purpose in that it shields Child from community hostility and physically distances him from his targets.

{10} We find support for our decision in the Children's Code. The Children's Code does not place limitations on the type of probation conditions the court may order. NMSA 1978, § 32A–2–19(B)(3) (2003) (stating that the court may "place the child on probation under those conditions and limitations as the court may prescribe"). Another section of the Children's Code, pertaining to the release of a child found to be ineligible for detention, gives the court the statutory power to "place restrictions on the child's travel, association with other persons or place of abode during the period of the child's release." NMSA 1978, § 32A–2–13(F)(2) (2003). We read the Children's Code "as an entirety" and interpret each provision "so as to correlate as faultlessly as possible with all other sections." *State v. Henry L.,* 109 N.M. 792, 794, 791 P.2d 67, 69 (Ct.App. 1990). Therefore, although the disposition in this case was not ordered pursuant to Section 32A–2–13, this statute does support the notion that placing restrictions on a child's travel or place of residence is consistent with the Children's Code.

{11} We also recognize that the general considerations governing the appropriateness of probation conditions in adult cases are consistent with our holding today. At the outset, we note that probation in juvenile cases is considerably different from adult probation. *Henry L.,* 109 N.M. at 794–95, 791 P.2d at 69–70. While our cases discussing adult probation conditions are not

necessarily binding on juvenile cases, they can provide guidance in determining whether a juvenile's probation condition is reasonable. In adult cases, we only overturn probation conditions that "1) . . . have no reasonable relation to the offense for which the defendant was convicted; 2) relate to activity which is not itself criminal in nature; and, 3) require or forbid conduct which is not reasonably related to deterring future criminality." *State v. Taylor*, 104 N.M. 88, 96–97, 717 P.2d 64, 72–73 (Ct.App.1986) (upholding a probation condition that required the defendant to pay restitution). "A judge, in fashioning the terms of probation, may impose conditions reasonably related to the probationer's rehabilitation, which are designed to protect the public against the commission of other offenses during the term, and which have as their objective the deterrence of future misconduct." *State v. Donaldson*, 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct.App. 1983) (internal citation omitted). While the activity at issue in this case is not itself criminal in nature, it is quite closely related to Child's offenses, all of which took place in the areas to which Child is not permitted to travel. The residents of these communities have expressed their fears of Child. Because Child expressly named other potential crimes and crime victims in the Cloudcroft and Cox Canyon areas, keeping Child away from these areas is reasonably related to deterring his future criminality and is designed to protect the public. By removing Child from the hostile environment, the condition is designed to aid in his rehabilitation.

## ISSUE TWO: Cruel and Unusual Punishment

■ {12} Child also argues that his detention subsequent to his release from Mesilla Valley Hospital but prior to his admission into Sequoyah was cruel and unusual punishment. Essentially, he argues that when a juvenile's punishment does not "meet the purposes enumerated by the legislature" in the Children's Code, it is per se cruel and unusual punishment under New Mexico's Constitution. In a broader policy argument, Child asserts that the delay caused by the unavailability of space in Sequoyah is indicative of the Legislature's failure to adequately

fund residential treatment centers. Child suggests that this Court should label his detention as cruel and unusual so as not to punish Child "for the dismal failure of the legislature."

■ {13} Initially, we note that there is a serious shortfall in the factual record underlying Child's cruel and unusual punishment arguments. The record does not provide a definite date that Child left Mesilla Valley Hospital, although we infer that it was on or around June 18, 2002, when the detention order was issued. The record is completely silent as to when Child was admitted into Sequoyah. Child's attorney asserts that Child was admitted into Sequoyah "on or about September 27, 2002," and he alleges that this means there was a delay of nearly three months between the judgment and disposition ordering his treatment at Sequoyah and Child's actual admittance. However, Child's attorney offers no evidence of this delay, other than to say that he received a telephone call from Child's parents confirming the week of admittance. Arguments of counsel are not evidence and cannot be used to prove a fact. *In re Application of Metro. Invs., Inc.*, 110 N.M. 436, 441, 796 P.2d 1132, 1137 (Ct.App.1990). In addition, counsel's offer of hearsay is not an adequate basis upon which to review an alleged delay between Child's treatment center placements. As a result, we will not consider the length of the Child's detention in our analysis of this issue. *See State ex rel. Educ. Assessments Sys., Inc. v. Coop. Educ. Servs. of N.M., Inc.*, 110 N.M. 331, 332, 795 P.2d 1023, 1024 (Ct. App.1990) (holding that it is appellate counsel's duty to present a record adequate for review of an issue).

{14} Second, Child's cruel and unusual punishment argument was not raised below, despite ample opportunity to object to the detention. Child was detained prior to his evaluation at YDDC and prior to his admission into Mesilla Valley Hospital, but he never raised an objection to those detentions, nor does he now assert that those detentions were impermissible. Prior to the detention that he now claims as error, there was a hearing on the detention and probation revocation, at which Child appeared. Child ad-

mitted his probation violations. Counsel for the State and Child's counsel then attempted to determine the best and most efficient way to secure Child's admission to Sequoyah at the earliest possible date. The court expressed concern that if Child was released pending his placement at Sequoyah, he might have a relapse in behavior or fail to take his medications. The court offered to condition Child's detention upon admittance into Sequoyah within ten days, but Child did not avail himself of this offer. Child did not object to the clear provision in the July judgment and disposition, stating that he would "remain in detention pending transportation . . . to the treatment center if accepted or to the court for further disposition."

{15} In general, a party must fairly invoke a ruling from the trial court in order to preserve a question for appeal. Rule 12–216(A) NMRA 2003. The preservation rule is more than a mere technicality; its purpose is to give the trial court the opportunity to correct any error. *See Diversey Corp. v. Chem–Source Corp.*, 1998 NMCA 112, ¶ 12, 125 N.M. 748, 965 P.2d 332. This rationale is especially apposite when, as here, the trial court made every effort to determine whether its decision on the issue of pre-Sequoyah detention was objectionable, and even offered to fashion a different, less restrictive remedy.

{16} Even if we reach the merits of Child's arguments, we are unpersuaded. Child argues that his detention violated the New Mexico Constitution which reads, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." N.M. Const. art. II, § 13. Child does not cite us to any authority to support his argument, either by discussing cases holding that similar conditions were held to be cruel and unusual or by analogizing to some other circumstance that was held to violate constitutional standards. We find no case to support the proposition that detention of a child awaiting residential treatment is cruel or unusual.

{17} In general, a lawful sentence does not constitute cruel and unusual punishment. *State v. Augustus*, 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.1981). There is no indication that Child's detention was unlawful. The State filed a motion for detention, pursuant to NMSA 1978, § 32A–2–11 (2003), which reads in part:

A. Unless ordered by the court pursuant to the provisions of the Delinquency Act, a child taken into custody for an alleged delinquent act shall not be placed in detention unless a detention risk assessment instrument is completed and a determination is made that the child:

(1) poses a substantial risk of harm to himself;

(2) poses a substantial risk of harm to others; or

(3) has demonstrated that he may leave the jurisdiction of the court.

Child's actions at Mesilla Valley Hospital were consistent with a finding that Child posed a substantial risk of harm to others. The decision to detain Child was made after considering the possible setbacks that Child might face if he were released prior to admission into Sequoyah, and the trial court noted the importance of continuing his medication. The unopposed decision to detain him properly considered his physical health as well as his therapeutic progress. Child was present and did not object to the detention. Thus, in addition to satisfying the detention requirements, the trial court's decision properly considered all the factors that are pertinent in making a disposition subsequent to probation revocation. *See* NMSA 1978, § 32A–2–24(B) (1993) (stating that a probation revocation hearing may result in any judgment and disposition appropriate at the original dispositional hearing); § 32A–2–19(A) (listing the factors that the court may consider in determining a disposition, including the child's best interests, the child's wishes, and the child's mental and physical health). We find nothing to support the notion that the detention was cruel or unusual.

{18} Furthermore, to the extent that Child argues that finding for him on this issue would compel increased legislative appropriation for treatment centers and "force compliance with the Children's Code and the purposes therein," there is no support for this notion. The Legislature has the "power to

affix reasonable provisions, conditions or limitations upon appropriations and upon the expenditure of the funds appropriated." *State ex rel. Coll v. Carruthers,* 107 N.M. 439, 444, 759 P.2d 1380, 1385 (1988) (internal quotation marks and citations omitted). We will not question or attempt to coerce the Legislature's decision to fund treatment centers at a level that results in some children being required to wait for an available space. *See State v. Brown,* 2004–NMCA–037, ¶¶ 30–32, 135 N.M. 291, 87 P.3d 1073 [No. 23,610 (N.M.Ct.App. Jan. 15, 2004) ]. We also point out that it was Child's violent acts during his previous residential treatment placement, and not the mere existence of a delay in admittance to Sequoyah, that resulted in the need for Child's detention.

{19} The Legislature's purpose in enacting the Delinquency Act, NMSA 1978, § 32A–2–2 (2003) was:

> A. consistent with the protection of the public interest, to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors, and to provide a program of supervision, care and rehabilitation, including rehabilitative restitution by the child to the victims of the child's delinquent act to the extent that the child is reasonably able to do so;
>
> B. to provide effective deterrents to acts of juvenile delinquency, including an emphasis on community-based alternatives; and
>
> C. to strengthen families and to successfully reintegrate children into homes and communities.

The mix of residential treatment, restitution, apologies, and other remedies in Child's disposition reflects an attempt to meet these goals by protecting the communities that Child has harmed and providing a stable environment for Child's rehabilitation. Child's interim detention was part of this overall scheme. It served the specific purposes of holding Child accountable, providing supervision, ensuring for his health and physical safety, providing a deterrent, and acting in a manner consistent with the public interest.

## CONCLUSION

{20} We affirm Child's disposition and judgment, holding that the conditions of his probation do not constitute illegal banishment and are permissible under the Children's Code. We also find no error in Child's detention prior to admittance into Sequoyah.

{21} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.