2007-NMCA-141

170 P.3d 533

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**James NASH, Defendant–Appellee.**

**No. 25,700.**

Court of Appeals of New Mexico.

Sept. 5, 2007.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Catherine A. Begaye, Assistant Appellate Defender Santa Fe, NM, for Appellee.

**OPINION**

ROBINSON, Judge.

{1} By statute, a defendant's sentence for driving while intoxicated (DWI) will be enhanced upon proof of prior, valid convictions for DWI. The State appeals the district court's ruling that it could not enhance Defendant James Nash's sentence for DWI based on the invalidity of one of his prior convictions for DWI. The State argues that the district court erred for two reasons: (1) the district court considered an oral statement by Defendant's attorney as evidence; and (2) Defendant is barred from collaterally attacking his ten-year old, prior conviction because his prior conviction was pursuant to a guilty plea. We conclude that (1) the State did not preserve its argument against the use of the statement of defense counsel as evi-

dence; and (2) fundamental fairness requires that Defendant be allowed to collaterally attack his prior conviction under these circumstances. We, therefore, affirm.

## I. BACKGROUND

{2} The parties agree on the facts underlying this appeal. On June 6, 2004, Defendant was arrested for DWI, driving with a suspended license, and careless driving. Defendant pleaded guilty to DWI and careless driving, and the State agreed not to pursue charges of driving with a suspended license.

{3} Under the plea agreement, Defendant admitted his identity in four prior DWI convictions. Under the newly amended DWI laws applicable at the time of Defendant's arrest with four prior DWI convictions and the 2004 conviction to which he was pleading guilty, Defendant would have been required to serve at least one year of mandatory confinement. *See* NMSA 1978, ¶ 66–8–102(H) (2004) ("Upon a fifth conviction [for DWI], an offender ... shall be sentenced to a term of imprisonment of two years, one year of which shall not be suspended, deferred or taken under advisement."). At the plea hearing, Defendant challenged the validity of his 1994 DWI conviction by guilty plea for lack of subject matter jurisdiction. A few months after Defendant's 1994 guilty plea, we held in *City of Rio Rancho v. Young,* 119 N.M. 324, 327, 889 P.2d 1246, 1249 (Ct.App. 1995) that, pursuant to NMSA 1978, § 3–49–1(O) (1967), municipalities do not have the jurisdiction to regulate speed and traffic on private property without the prior, written consent of the owner. This is the basis of Defendant's argument that the prior conviction was rendered by a court that had no jurisdiction.

{4} Defendant's counsel stated that the police report, relating to the 1994 DWI incident, made it very clear that the offense occurred on private property, and that the charge was a municipal code violation. Defense counsel argued that municipalities did not have the jurisdiction to assert their laws on private property. Defendant argued that apparently his 1994 defense counsel was unaware of the issue. The State responded by arguing that, in order to collaterally attack

the prior conviction, Defendant bore the difficult burden of establishing that it would be fundamentally unfair to allow the conviction to stand. The State did not specifically object to the court relying on defense counsel's factual assertion that the 1994 DWI occurred on private property, nor did the State introduce contrary evidence. The district court concluded that it would be fundamentally unfair to rely on a conviction which occurred without jurisdiction. Thus, the court found that the 1994 DWI conviction was invalid and did not consider it for the purposes of enhancement of Defendant's sentence on the current DWI conviction.

## II. DISCUSSION

{5} Despite the failure of both parties to cite the correct law, we apply the controlling cases as the issues are properly before this Court. *See Webb v. Menix,* 2004–NMCA–048, ¶¶ 30–35, 135 N.M. 531, 90 P.3d 989 (applying New Mexico case law, even though not all of the controlling cases were cited by the parties).

## A. The State Did Not Preserve Its Argument Against The Use of Defense Counsel's Statement as Evidence.

{6} The State argues that the district court erred in considering defense counsel's statement that the driving, which formed the basis of the 1994 DWI conviction, occurred on Defendant's private property. We review the admission or exclusion of evidence for an abuse of discretion. *State v. Otto,* 2007–NMSC–012, ¶ 9, 141 N.M. 443, 157 P.3d 8. We find an abuse of discretion where the district court's decision is "clearly untenable or not justified by reason." *State v. Kent,* 2006–NMCA–134, ¶ 18, 140 N.M. 606, 145 P.3d 86 (internal quotation marks and citation omitted); *see State v. Gaede,* 2000–NMCA–004, ¶¶ 14, 16, 128 N.M. 559, 994 P.2d 1177 (holding that the district court did not abuse its discretion in considering particular evidence and judging the credibility of the witnesses).

{7} In *State v. Smith,* 110 N.M. 534, 537, 797 P.2d 984, 987 (Ct.App.1990), the district court enhanced the defendant's sentence based on the victim's age where the prosecu-

tor orally represented that the victim was eighty-four years old. At the time of the defendant's conviction, a sentence could be enhanced if the victim was sixty years of age or older. NMSA 1978, § 31–18–16.1 (1989) (repealed 2003). In *Smith*, the defendant argued that the State presented no evidence upon which the court could conclude that the victim was sixty years of age or older. 110 N.M. at 536, 797 P.2d at 986. We held that "the matter of a lack of formal evidence was not called to the trial court's attention and we will not decide the question under these circumstances." *Id.* at 537, 797 P.2d at 987.

{8} We believe that the case before us is analogous to *Smith*, as the parties did not address below whether Defendant was required to produce formal evidence, or even whether the Rules of Evidence apply to the court's determination of the validity of the 1994 conviction. The State did assert, generally, Defendant's burden in establishing the invalidity of the 1994 conviction. The applicable burdens are set out in *Gaede*.

In order for the State to enhance Defendant's sentence as a third or subsequent DWI offender, the State bears the initial burden of presenting evidence of the validity of each of his prior convictions. Once the State establishes a prima facie case showing the existence of valid prior convictions, the defendant is entitled to bring forth contrary evidence. The State, however, bears the ultimate burden of persuasion as to the validity of each of Defendant's prior convictions.

2000–NMCA–004, ¶ 8 (internal quotation marks and citations omitted). Applying *Gaede* does not alter our conclusion that the State should have raised the claimed error below. As to the other three prior DWI convictions, the parties stipulated to their validity. The record does not reveal that the State initially established a prima facie showing of the validity of the 1994 conviction. However, as Defendant does not argue that this burden was not met, we assume that there was a prima facie showing. Defendant then asserted that the 1994 conviction occurred on private property. Had the State believed that this statement was incorrect, it should have insisted on formal evidence.

Thus, we conclude that the issue was not preserved, and we will not address it. *State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280; *State v. Ruiz*, 2007–NMCA–014, ¶ 45, 141 N.M. 53, 150 P.3d 1003. Preservation requires a party to apprise the court of possible error in a timely and specific manner so that the court can prevent it.

{9} We note that both parties relied on the case of *State v. Wacey C.*, 2004–NMCA–029, ¶ 13, 135 N.M. 186, 86 P.3d 611, for the proposition that "[a]rguments of counsel are not evidence and cannot be used to prove a fact." We agree that this is a correct statement of the general rule. However, the procedural posture and issue raised in *Wacey C.* are distinguishable from the case at hand. First, in *Wacey C.*, the issue was whether the child was subject to cruel and unusual punishment when the child was detained in a juvenile detention center for three months while waiting for a vacancy to become available for him at a residential adolescent treatment center. *Id.* ¶¶ 1, 6. In that case, we held that the child did not preserve the issue by failing to argue the issue to the court below, and also the child presented an insufficient record for review. *Id.* ¶¶ 13–15. We stated that the record was silent as to when the child entered the treatment center and that, on appeal, the child's counsel asserted that there was a delay of three months and noted that the only information as to when the child entered treatment was a statement on appeal by the child's counsel. *Id.* We also held that, even if we were to address the merits, we would not find cruel and unusual punishment. *Id.* ¶ 16. Thus, unlike in this case, in *Wacey C.*, we were concerned with addressing a legal issue raised for the first time on appeal based on a lack of a record to review. Here, we are presented with a party-the State-who is asking us to reverse by finding an abuse of discretion based on a lack of formal evidence, which is an issue that the State failed to raise below. This case is more analogous to *Smith* than to *Wacey C.*, and we decline to address the issue because the State failed to preserve its argument below.

## II. Defendant Is Not Barred From Collaterally Attacking His 1994 Conviction.

{10} The State also argues that Defendant is barred from collaterally attacking his 1994 conviction because he pleaded guilty to the 1994 charge of DWI and did not reserve the right to appeal that conviction. The State argues that Defendant should be barred from relying on the holding in *Young*, a case decided months after the 1994 conviction became final because Defendant was capable of making the same arguments as those made in *Young* in his 1994 case, but failed to do so.

{11} Whether Defendant is barred from collaterally attacking his 1994 conviction based on fundamental error is a question of law, which we review de novo. *See State v. DeGraff*, 2006–NMSC–011, ¶ 6, 139 N.M. 211, 131 P.3d 61 (stating that arguments raising questions of constitutional law are reviewed de novo); *see also Montoya v. Ulibarri*, 2007–NMSC–035, ¶ 14, 142 N.M. 89, 163 P.3d 476 (stating that the issue of whether the defendant had a ground upon which to collaterally attack his conviction was a question of law reviewed de novo).

{12} The general law concerning collateral attacks during sentence enhancement is well established. Considering whether a collateral attack could be brought in a habitual offender proceeding, our Supreme Court has held that "[t]he charge of being [a] habitual offender is ... effectively refuted by proof that the prior convictions were not constitutionally valid as, for example, where one went to trial without a lawyer under the circumstances where the appointment of someone to represent him was a requirement of due process." *State v. Dalrymple*, 75 N.M. 514, 520, 407 P.2d 356, 360 (1965). In *State v. Pino*, 1997–NMCA–001, 122 N.M. 789, 932 P.2d 13, a case concerning whether a prior DWI conviction was valid and could be considered to enhance the sentence for a subsequent DWI, we stated:

A defendant may not raise every conceivable error that may have led to the prior conviction, but is limited to those errors that would form the basis of a legitimate collateral attack, i.e., those errors that would "void" the conviction by amounting

to the denial of the substance of a fair trial or amounting to fundamental error.

*Id.* ¶ 14.

{13} It is also clear that a conviction that is not based on substantial evidence of each element of a crime amounts to fundamental error. *State v. Clemonts*, 2006–NMCA–031, ¶ 10, 139 N.M. 147, 130 P.3d 208. In *State v. Mascarenas*, 2000–NMSC–017, ¶¶ 20–21, 129 N.M. 230, 4 P.3d 1221, our Supreme Court held that fundamental error occurred where the jury had not been properly instructed on all of the elements of negligent child abuse resulting in death. The Court stated that "the trial court's failure to provide the [proper] instruction was a critical determination akin to a missing elements instruction." *Id.* ¶ 20. Thus, "[t]o allow [the defendant's] conviction to stand when there is a distinct possibility that he was convicted under [the wrong] standard ... would result in a miscarriage of justice and therefore we find that fundamental error occurred." *Id.* ¶ 21.

{14} The State does not make an argument contrary to any of the law set forth above, but argues that because Defendant pleaded guilty to the 1994 charge, he is foreclosed from raising any of these arguments. We disagree. While no New Mexico case has addressed whether a guilty plea may be collaterally attacked under these circumstances, the United States Supreme Court has addressed the issue in the context of a collateral attack by means of a habeas corpus proceeding. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). A habeas corpus proceeding is a collateral attack, like the attack in this case. *State v. Forbes*, 2005–NMSC–027, ¶ 16, 138 N.M. 264, 119 P.3d 144 (Serna, J., dissenting) ("Habeas corpus always has been a *collateral* remedy." (internal quotation marks and citation omitted)). In *Bousley*, the defendant brought a habeas corpus proceeding to challenge the validity of his guilty plea to using a firearm in violation of 18 U.S.C. § 924(c)(1). *Bousley*, 523 U.S. at 616, 118 S.Ct. 1604. After the defendant's initial conviction by guilty plea was final, the United States Supreme Court held in a separate case that, in order to prove "use" of a firearm, the Government had to prove "active employment of

the firearm" and not mere "possession" of a firearm. *Id.* at 616, 618, 118 S.Ct. 1604 (quoting *Bailey v. United States,* 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). Thus, the defendant filed his habeas proceeding, arguing that he should be allowed to challenge the validity of his plea under the holding in *Bailey* because allowing the conviction to stand would mean that the defendant had been "convicted of an act that the law does not make criminal." *Id.* at 620, 118 S.Ct. 1604 (internal quotation marks and citation omitted).

{15} In *Bousley,* the Government argued that the holding in *Bailey* should not be applied to the defendant's habeas claim because the Court held in *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced, unless the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Bousley,* 523 U.S. at 619–20, 118 S.Ct. 1604 (internal quotation marks and citations omitted). The Court disagreed, stating that "because *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." *Id.* at 620, 118 S.Ct. 1604. The Court expounded, stating:

> [O]ne of the principal functions of habeas corpus [is] to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.... [D]ecisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal.

*Id.* (internal quotation marks and citations omitted).

{16} The Court held that because the petitioner had not raised the issue in a direct appeal, he had "procedurally defaulted the claim," which he was then raising in his habeas petition. *Id.* at 621, 118 S.Ct. 1604. Thus, the Court applied the rule that where a defendant has procedurally defaulted a claim, it "may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Id.* at 622, 118 S.Ct. 1604 (internal quotation marks and citations omitted). The Court then determined that the petitioner had not demonstrated cause and thus could not raise his habeas petition under the first avenue for relief, but that the petitioner may have been able to demonstrate actual innocence and thus remanded for a hearing on that issue. *Id.* at 622–23, 118 S.Ct. 1604.

{17} Finally, we must note that the Court in *Bousley* also relied on the fact that the defendant was raising a claim that his plea was not intelligent and thus constitutionally invalid because he was not informed of the true nature of the charges against him. *Id.* at 618–19, 118 S.Ct. 1604. In other words, the Court relied on a claim of a constitutional error in addition to the defendant's claim of actual innocence in granting relief. *See id.* Our Supreme Court recently held that a habeas corpus petitioner may "obtain habeas relief based upon a freestanding claim of actual innocence, independent of any constitutional violation at trial." *Montoya,* 2007–NMSC–035, ¶ 1. The Court went on to state that "to ignore a claim of actual innocence would be fundamentally unfair." *Id.* ¶ 23. Finally, the Court in *Montoya* held, as the case before it involved a claim of actual innocence based on new evidence, that the standard a defendant must meet in order to be granted relief is to "establish by clear and convincing evidence that no reasonable juror would have convicted him in light of new evidence." *Id.* ¶ 1. This is similar to, though perhaps more stringent than, the standard applied by the Court in *Bousley,* which was "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623, 118 S.Ct. 1604 (internal quotation marks and citation omitted).

{18} Applying the law discussed in the cases above, we conclude that it was proper for the district court to consider Defendant's

collateral attack on his 1994 conviction for DWI during the sentence enhancement proceeding in this case. The district court properly determined that fundamental error occurred. "Fundamental fairness is intrinsic within the concept of due process that is provided by the New Mexico Constitution." *Montoya*, 2007–NMSC–035, ¶ 23. Under *Montoya, Mascarenas, Teague*, and *Bousley*, it is fundamental error to convict a defendant for conduct that is not criminal. We also believe that it is an additional, fundamentally unfair insult to justice to thereafter enhance a later sentence based on conduct which is not criminal. The district court did not err in concluding that it would be fundamentally unfair to enhance Defendant's sentence based on the 1994 constitutionally invalid DWI conviction.

{19} We realize that, under the circumstances of this case, there is no indication of whether the district court applied the "clear and convincing evidence" standard of *Montoya*, or the "more likely than not" standard of *Bousley*. Without deciding which standard is the correct standard, we believe that even the more burdensome standard of *Montoya* is met in this case. Defendant's counsel stated that the police report indicated that the offense occurred on Defendant's private property. The State did not object to or contest this assertion. Reiterating that we are not prepared to hold that formal evidence was required where the State did not object to the defense counsel's assertion of fact below, we hold that the court could have determined that clear and convincing evidence indicated that Defendant's 1994 conviction was constitutionally invalid. The district court properly refused to consider Defendant's 1994 DWI conviction in enhancing Defendant's sentence.

## III.  CONCLUSION

{20} We, therefore, affirm.

{21} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.