This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36529

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CESAR RODRIGUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Defendant was convicted by a jury of aggravated fleeing from a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003); resisting an officer, contrary to NMSA 1978, Section 30-22-1(C) (1981); possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A), (E) (2011, amended 2019); and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2001, amended 2019). On appeal, Defendant raises five issues. First, he challenges whether

there was sufficient evidence to support his convictions for aggravated fleeing from a law enforcement officer, possession of methamphetamine or paraphernalia, and resisting arrest. Second, Defendant contends that the district court erroneously allowed improper testimony pertaining to his history of contact with local law enforcement. Defendant's remaining three issues are brought pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1. Specifically, Defendant argues that: (1) a juror lacked impartiality; (2) the State failed to establish the timeliness of Defendant's prior conviction used to enhance his sentence; and (3) Defendant received ineffective assistance of counsel. We hold that there was insufficient evidence to prove Defendant had been given a signal to stop by a uniformed law enforcement officer, and therefore reverse his conviction for aggravated fleeing. We affirm Defendant's remaining convictions.

## I.      Insufficient Evidence Supported Defendant's Conviction for Aggravated Fleeing From a Law Enforcement Officer.

{2}      Defendant asserts there was insufficient evidence to establish the offense of aggravated fleeing from a law enforcement officer. This Court reviews "sufficiency of the evidence on appeal from a highly deferential standpoint." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. "The evidence is to be viewed in the light most favorable to the [s]tate, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *Id.* In conducting this review, we "determine whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *Id.*

{3}      When reviewing for sufficiency of the evidence, "the jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409. At trial, the jury was instructed,

>    For you to find [D]efendant guilty of aggravated fleeing a law enforcement officer as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
>    1.      [D]efendant operated a motor vehicle;
>
>    2.      [D]efendant drove willfully and carelessly in a manner that endangered the life of another person;
>
>    3.      [D]efendant had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle;
>
>    4.      [D]efendant knew that a law enforcement officer had given him an audible or visual signal to stop;

5.	This happened in New Mexico on or about 31st day of August, 2016.

*See* UJI 14-2217 NMRA.

**{4}**	Defendant argues that the evidence to prove the aggravated fleeing charge against him is insufficient on two separate grounds. First, Defendant contends that the evidence was insufficient to establish that he was "given a visual or audible signal to stop, . . . by a uniformed law enforcement officer[,]" as required by the statute. Section 30-22-1.1(A). Next, Defendant contends the State failed to provide proof of actual endangerment to another person, as required by Section 30-22-1.1.

**{5}**	We first consider Defendant's claim that there was insufficient evidence that he was given a signal to stop by a uniformed officer. Detective Adrianna Munoz of the Clovis Police Department testified that, while she was on duty in her unmarked police unit, she came into contact with Defendant. Detective Munoz testified that she was very familiar with Defendant and knew he had outstanding warrants at the time she came into contact with him. After Detective Munoz followed him for a time, Defendant pulled over and got out of the car he was driving, with Detective Munoz still behind him. When Defendant saw Detective Munoz parked behind him, he got back into the car and drove away. Detective Munoz activated her emergency equipment, including her sirens, and pursued Defendant. Detective Munoz did not testify about whether she was wearing a uniform at the time she encountered Defendant; however, Captain Roger Dial testified that when on duty, Detective Munoz does not wear a uniform and instead, "is usually dressed professionally" and wears a gun and badge on her belt that is not always visible.

**{6}**	The State contends that, notwithstanding the fact that Detective Munoz was not wearing a uniform at the time she encountered Defendant, a second officer also joined in the pursuit; and, while the State did not put on testimony that this officer was in uniform, we should infer from the fact that he was on duty in a marked patrol vehicle that he was wearing a uniform at the time he pursued Defendant. We disagree. "[T]his Court has made clear that an inference must be linked to a fact in evidence." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930. "A reasonable inference is a conclusion arrived at by a process of reasoning[,] which is a rational and logical deduction from facts admitted or established by the evidence." *Id.* (alterations, internal quotation marks, and citation omitted); *Bowman v. Inc. Cty. of Los Alamos*, 1985-NMCA-040, ¶ 9, 102 N.M. 660, 699 P.2d 133 ("An inference is more than a supposition or conjecture. It is a logical deduction from facts which are proven, and guess work is not a substitute therefor." (internal quotation marks and citation omitted)).

**{7}**	Here, the State failed to provide any evidence that either Detective Munoz or the second officer who joined the pursuit was wearing a uniform. Nor did the State provide any testimony that an officer on duty in a marked patrol vehicle usually wears a uniform. Instead, the State suggests that we should infer that the second officer was wearing a uniform within the meaning of Section 30-22-1.1(A) from testimony that, unlike Detective

Munoz, the second officer was not a detective. We are unpersuaded that the fact that a police officer was not a detective is a sufficient substitute for evidence beyond a reasonable doubt that he was actually wearing a police uniform for purposes of the requirements of the statute.

**{8}** The State also argues that a comment from defense counsel to a third officer who testified at trial created an inference that patrol officers usually wear police uniforms. Defense counsel observed that the third officer, also an officer on duty in a marked patrol vehicle at the time of the pursuit, wore a patrol officer's uniform at the time of trial. However, arguments by counsel are not evidence on which we can rely to draw an inference. *See State v. Wacey C.*, 2004-NMCA-029, ¶ 13, 135 N.M. 186, 86 P.3d 611 ("Arguments of counsel are not evidence and cannot be used to prove a fact."). Furthermore, the comments on which the State relies do not support its claim that "an officer on duty in a marked patrol vehicle at the time of the pursuit, wore a patrol officer's uniform." Defense counsel stated to the officer, "I'm going to say this. This is going to sound strange. But you look like a cop, right? You're wearing a uniform, you look like a tough guy, you are a cop, correct?" At no time did defense counsel question, or elicit testimony that the officer was on duty, was in a marked patrol vehicle, or was wearing a patrol officer's uniform at the time of the pursuit. Instead, he only indicated that because he was wearing a uniform as he testified at trial, he looked like a cop. Nothing in this comment allows us to infer that the second officer who joined the pursuit of Defendant was in uniform.

**{9}** With regard to the detective who initiated the pursuit at issue, the State explicitly asks this Court to overrule its recent opinion in *State v. Montaño*, 2018-NMCA-047, 423 P.3d 1, *cert. granted*, 2018-NMCERT-___ (S-1-SC-37021, July 24, 2018). That opinion held that an officer wearing street clothes with equipment on his belt and a badge affixed to his shirt was not "uniformed" for purposes of Section 30-22-1.1(A). *Montaño*, 2018-NMCA-047, ¶ 47. Initially, we note that the facts in *Montaño* differ from the facts in this case in that the testimony in *Montaño* established that at the time of the incident, the officer was dressed in "a dress shirt with tie, dress slacks, and dress shoes. His badge was displayed on the breast pocket of his shirt." *Id.* ¶ 2 (internal quotation marks omitted). In this case, the State offered no testimony about what Detective Munoz was wearing at the time she made contact with Defendant. Instead, the only testimony offered addressing her attire was testimony from Captain Dial who testified about what Detective Munoz "usually" wears. Further, Captain Dial's description of Detective Munoz's attire was limited to an explanation that it was "professional." In the absence of testimony about Detective Munoz's attire when she encountered Defendant and only a limited description of what Detective Munoz "usually" wears, we cannot evaluate whether her attire at the time of the incident would satisfy Section 30-22-1.1, even if we were to reconsider *Montaño*. We therefore decline to reconsider *Montaño* under the facts of this case.[1]

---

[1]We note that our Supreme Court has granted certiorari in *Montaño*, and the case is under submission with that Court. 2018-NMCA-047. To the extent that the State argues *Montaño* was decided in error, the proceedings on certiorari will appropriately address that question.

**{10}** We therefore conclude that the State's failure to offer any evidence that a uniformed officer was involved in the pursuit of Defendant necessitates a reversal of the conviction for aggravated fleeing. Because we reverse the conviction on that basis, we need not address Defendant's second sufficiency argument—that he did not actually endanger the life of another person during that pursuit.

## II.     Substantial Evidence Supports Defendant's Convictions of Possession of Methamphetamine and Paraphenalia

**{11}** Defendant next asserts that there was no substantial evidence that he was in possession of methamphetamine and a pipe that were found in the car he was driving. Defendant asserts, for instance, that there was no evidence that he handled the items and points out that he was arrested after having left the car in which the contraband was found. Relying upon these facts, Defendant argues that the State's evidence established no more than his proximity to the contraband and that there was no additional evidence "to permit[] an inference of control." We note, however, that the contraband at issue was found in plain sight within the car Defendant drove shortly after he left the car. The methamphetamine was in a console between the front seats, the pipe was on the passenger's side front floor, and both items were visible from the driver's seat. Defendant speculates that "[i]t is just as possible that a passenger in the car at some point could have left the [drugs and paraphernalia] in the car." However, there was no evidence to suggest that these items may have belonged to a passenger in the car and Detective Munoz testified that she did not see anyone else in the car during her pursuit of Defendant.

**{12}** The jury was properly instructed that a person possesses something "when he knows it is on his person or in his presence, and he exercises control over it." *See* UJI 14-130 NMRA (defining "possession"). Here, the evidence presented at trial was that the contraband was both visible and accessible from the driver's seat and Defendant was the only person seen in the car. We conclude that the evidence presented at trial was sufficient to allow a reasonable jury to infer that Defendant was in actual possession of the drugs and paraphernalia.

## III.    Sufficient Evidence Was Presented to Support Defendant's Conviction for Resisting an Officer

**{13}** Defendant also challenges the sufficiency of the evidence to support his conviction of resisting an officer because "[n]o testimony established that [Defendant] failed or refused to comply with any specific command." Before we proceed with our review of Defendant's claim, however, we note that the criminal information filed in this case charged Defendant with resisting, evading or obstructing an officer based on Defendant's refusal to stop when instructed to do so by Officer Jacob Bonner of the Clovis Police Department, contrary to Section 30-22-1(C). By contrast, the criminal complaint and affidavit for arrest warrant charged Defendant with resisting, evading or obstructing an officer based on Defendant's resisting a peace officer in the lawful discharge of duty, contrary to Section 30-22-1(D). The instruction tendered to the jury

followed the criminal complaint and was based on Defendant's resisting, evading or obstructing "[Detective] Dale Rice . . . in the lawful discharge of [his] duty[,]" mirroring the statutory requirements of Subsection D. *See* § 30-22-1(D). To further confuse matters, the judgment and sentence entered by the district court adjudged Defendant guilty of violating Subsection C, the refusal to stop provision of the statute, and sentenced him for that violation. As neither of the parties raised this discrepancy on appeal, the instruction tendered to the jury was based on Subsection D, and Defendant's appellate arguments are also based on Subsection D, we assume that the references in the criminal information and the judgment and sentence, referring to Subsection C, were in error and we proceed to consider Defendant's claim that there was insufficient evidence to convict him of violating Section 30-22-1(D).

**{14}**   At the time of his arrest, Defendant had left the car he was driving and was found inside of another parked car. Defendant got out of that second car when commanded to do so. One of the officers involved in the arrest testified that at that point, other officers "were standing around with weapons drawn ordering [Defendant] to the ground." The testimony continued that Defendant stood "in the crook of that [car] door, standing right next to the door" and was standing in an offensive/defensive position looking around and apparently trying to decide whether "fight or flight" were options. This testimony supports the contention that Defendant resisted arrest by failing to comply with officers ordering him to the ground after he emerged from the parked car in which he was found. We conclude that the evidence was sufficient to support Defendant's conviction of resisting an officer in the lawful discharge of his duties, contrary to Section 30-22-1(D). We remand this matter to the district court with instructions to correct the judgment and sentence to reflect Defendant's conviction under Section 30-22-1(D).

## IV.   The Admission of Testimony Pertaining to Defendant's Previous Interactions With Law Enforcement Did Not Constitute Plain Error

**{15}**   Defendant claims error in connection with testimony regarding his prior interactions with law enforcement. More specifically, Defendant asserts that four law enforcement officers testified regarding their familiarity with Defendant. With regard to the first two officers, Defendant made no objection during trial, and it appears from the record that both the district court and the parties believed that such testimony could bear upon Defendant's state of mind at the time of his flight from those two officers. With regard to the third law enforcement witness to testify about prior encounters with Defendant, the officer responded to the question "how many times have you come into contact with [Defendant?]" by testifying "I know of three memorable ones; the most violent ones we had were three times," before being interrupted by an objection.

**{16}**   At the ensuing bench conference, the district court instructed the State to rephrase the question, being careful not to elicit information that could lead to a mistrial. Direct examination of that witness proceeded without further incident. On cross-examination, however, the witness responded to a question about Defendant's demeanor at the time of his arrest by testifying that "without going into the prior engagements I've had with him on the use of force that we've had, I would say that

would be the only way I could answer your question accurately." Another bench conference took place at which the district court offered to give a curative instruction, and told the State to advise its remaining witness that such testimony is inappropriate. The jury was instructed to disregard the testimony, and the cross-examination continued without further incident.

**{17}** Finally, during another officer's testimony, the witness began to answer a question by saying "I've had some experience with [Defendant]" before being interrupted by the State rephrasing the question. No further improper testimony was received. On appeal, Defendant asserts that the totality of these repeated references to Defendant's prior contacts with law enforcement were unduly prejudicial, denied him a fair trial, and require reversal.

**{18}** At the outset of our analysis, we note that Defendant objected only to the testimony of one witness, did not request a mistrial, and the only relief requested—a curative instruction—was granted by the district court. Accordingly, our review is for plain error. *See* Rule 11-103(E) NMRA (authorizing district courts to "take notice of a plain error affecting a substantial right, even if . . . not properly preserved"). In order to find plain error, this Court "must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Lucero*, 1993-NMSC-064, ¶ 12, 116 N.M. 450, 863 P.2d 1071 (internal quotation marks and citation omitted). The doctrine "is intended to be used sparingly as an exception to the rule requiring objections, which promotes efficient and fair proceedings." *State v. Miera*, 2018-NMCA-020, ¶ 13, 413 P.3d 491.

**{19}** Based on our review, it does not appear that the State intentionally elicited prejudicial testimony. Instead, the relevant testimony was generally volunteered by the witnesses rather than being responsive to the questions asked. Indeed, the most troublesome testimony occurred during cross-examination and resulted in a curative instruction from the court. Considering the improper testimony " 'in the context of the testimony as a whole[,]' " *id.* (quoting *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056), we cannot say that the testimony constituted an injustice that creates grave doubts about Defendant's guilty verdict. We find no error in the district court's decision not to take any further corrective actions than those requested—and granted—at trial.

## V.     The District Court Did Not Abuse Its Discretion by Allowing a Juror to Remain on the Jury

**{20}** Defendant also asserts that he was denied an impartial jury because a member of the jury was acquainted with an assistant district attorney who was present at counsel's table during the trial. Although the attorney at issue was not present for voir dire, he recognized the juror when he arrived at trial and informed the court of that fact during a break in testimony. Before proceeding with trial, the district court questioned the juror in chambers. The juror acknowledged having played volleyball with the attorney's wife a couple of years earlier, at that time only had a handful of conversations with the attorney, had not had contact with either the attorney or his wife since playing

volleyball, but said she could be fair and impartial. After the juror was excused from chambers, defense counsel acknowledged the juror's assertion that she could be a fair and impartial juror, but noted that she knew the assistant district attorney and that he was "a very likeable guy, so perhaps that could sway her." The court pointed out that the juror "believes she can be fair and impartial," and decided "the court will accept her answer as such."

**{21}** "The [district] court is in a better position than [the appellate court] to assess the demeanor and credibility of prospective jurors." *State v. Romero*, 2019-NMSC-007, ¶ 15, 435 P.3d 1231 (internal quotation marks and citation omitted); *State v. Johnson*, 2010-NMSC-016, ¶ 34, 148 N.M. 50, 229 P.3d 523 (noting that the district court "is in the best position to determine . . . any [potential] biases that may preclude jurors from acting fairly and impartially" (internal quotation marks and citation omitted)). Thus, "[w]e will not disturb the [district] court's decision absent a clear abuse of discretion or a manifest error." *State v. Sutphin*, 1988-NMSC-031, ¶ 16, 107 N.M. 126, 753 P.2d 1314.

**{22}** Defense counsel did not object to the district court's decision allowing the juror to remain on the jury panel, nor did he provide any evidence to rebut the juror's statement that she could be fair and impartial and decide the case based on the facts. Given the juror's passing acquaintance with the attorney at issue, her assertion that she could be fair and impartial, and finding nothing in the record to rebut this assertion, we conclude that the district court did not commit a clear abuse of discretion by allowing the juror to remain on the jury panel.

## VI. The State Met Its Burden of Proving the Timeliness of Defendant's Prior Conviction

**{23}** Defendant also argues that the State failed to establish the timeliness of a conviction used to enhance his sentence under the habitual offender statute. This issue was raised in a motion to reconsider Defendant's sentence. At the motion hearing, Defendant asserted his understanding that one of the convictions relied upon to enhance his sentence was dismissed as part of a global plea agreement reached in 2006. Defendant, however, was unable to produce any other evidence regarding the terms of that plea agreement, and the district court denied the relief requested. Because this Court is similarly unable to review matters not appearing in the record, Defendant's contention regarding the enhancement of his sentence provides no basis for relief in this Court. *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review.").

## VII. Ineffective Assistance of Counsel

**{24}** Defendant asserts a claim of ineffective assistance of counsel, based upon numerous claimed failures of trial counsel, specifically (1) failure to request a mistrial with regard to the evidentiary error discussed above; (2) failure to pursue various defense theories; and (3) failure to obtain documentary evidence of the global plea

agreement referenced above. Defendant does not assert, however, that this claim was developed below, and we find no facts in the record on appeal that would allow us to address it. There are, for instance, no facts currently before this Court upon which we could assess whether trial counsel's decisions regarding evidentiary objections were the result of a reasonable trial strategy. Similarly, we have no indication whether trial counsel expected evidence supporting alternative defense theories to be admissible, or what evidence the State could have offered in rebuttal. This is unsurprising, since facts bearing directly upon trial counsel's strategic decisions or communications between counsel and client will not generally appear in the record.

{25}    Fortunately, evidence related to such questions can generally be considered by way of habeas corpus proceedings pursuant to Rule 5-802 NMRA, and that is "the preferred avenue for adjudicating ineffective assistance of counsel claims." *Duncan v. Kerby,* 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466. Indeed, "habeas corpus is specifically designed to address such postconviction constitutional claims and is the procedure of choice in this situation." *Id.* If Defendant believes he can demonstrate ineffectiveness if given the opportunity to present evidence at a hearing, he remains free to do so pursuant to that rule.

**CONCLUSION**

{26}    For the foregoing reasons, we reverse Defendant's conviction of aggravated fleeing a law enforcement officer contrary to Section 30-22-1.1, remand this matter to the district court with instructions to correct the judgment and sentence to reflect Defendant's conviction under Section 30-22-1(D), and otherwise affirm the judgment and sentence entered below.

**{27}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**